**Slip Op. 10-31**

# UNITED STATES COURT OF INTERNATIONAL TRADE

SIOUX HONEY ASSOCIATION, ADEE HONEY
FARMS, MONTEREY MUSHROOMS, INC.,
THE GARLIC COMPANY, and BEAUCOUP
CRAWFISH, INC., dba RICELAND CRAWFISH,
INC. individually and on behalf of all others
similarly situated,

        Plaintiffs,

        v.

HARTFORD FIRE INSURANCE
COMPANY, HARTFORD ACCIDENT
AND INDEMNITY COMPANY, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF
ILLINOIS, HARTFORD INSURANCE
COMPANY OF THE MIDWEST, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, AEGIS SECURITY INSURANCE
COMPANY, AMERICAN CONTRACTORS
INDEMNITY COMPANY, AMERICAN HOME
ASSURANCE COMPANY, GREAT AMERICAN
ALLIANCE INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY OF NEW
YORK, INTERNATIONAL FIDELITY
INSURANCE COMPANY, LINCOLN GENERAL
INSURANCE COMPANY, WASHINGTON
INTERNATIONAL INSURANCE COMPANY,
XL SPECIALTY INSURANCE COMPANY,
UNITED STATES CUSTOMS AND BORDER
PROTECTION, ACTING CUSTOMS
COMMISSIONER JAYSON P. AHERN, UNITED
STATES DEPARTMENT OF COMMERCE,
SECRETARY OF COMMERCE GARY F.
LOCKE, and DOES 1 through 50, inclusive,

        Defendants.

**Before: Timothy C. Stanceu, Judge**

**Court No. 09-00141**

## OPINION AND ORDER

[Dismissing all claims brought solely against the surety defendants and those brought jointly against the surety defendants and the United States]

Dated: March 26, 2010

*Kelley Drye & Warren LLP* (*John E. Heintz*, *Donna L. Wilson*, *Kathleen W. Cannon*, *Michael J. Coursey*, *Marla H. Kanemitsu*, and *Richard D. Milone*), counsel for plaintiffs Sioux Honey Association, Adee Honey Farms, The Garlic Company, and Monterey Mushrooms, Inc. and co-counsel for plaintiff Beaucoup Crawfish of Eunice, Inc., dba Riceland Crawfish, Inc.

*Adduci, Mastriani & Schaumberg, LLP* (*Will E. Leonard* and *John C. Steinberger*), co-counsel for plaintiff Beaucoup Crawfish of Eunice, Inc., dba Riceland Crawfish, Inc.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael J. Dierberg*); *Andrew G. Jones* and *Albert T. Kundrat*, Office of Assistant Chief Counsel (Indianapolis), United States Customs and Border Protection, of counsel; *Jonathan Zielinski*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant United States.

*Sidley Austin, LLP* (*Neil R. Ellis*, *Lawrence R. Walders*, *Richard M. Belanger*, *Jennifer Lee H. McCandless*, *Jill Caiazzo*, *Carter G. Phillips*, and *Geoffrey D. Antell*) for defendants Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, and Hartford Insurance Company of the Southeast.

*Sandler, Travis & Rosenberg*, *PA* (San Francisco, California) (*Thomas R. Ferguson*) for defendants Aegis Security Insurance Company and Lincoln General Insurance Company.

*Steptoe & Johnson LLP* (*Herbert C. Shelley*, *Mark F. Horning*, *Mark A. Moran*, and *Susan R. Gihring*) for defendants American Contractors Indemnity Company, American Home Assurance Company, and XL Speciality Insurance Company.

*Crowell & Moring, LLP* (*Theodore R. Posner* and *Alexander H. Schaefer*) for defendants Great American Alliance Insurance Company, Great American Insurance Company, and Great American Insurance Company of New York.

*Wolff & Sampson PC* (*Armen Shahinian* and *Adam P. Friedman*) for defendant International Fidelity Insurance Company.

*Sandler, Travis & Rosenberg*, *PA* (Miami, Florida) (*Gilbert L. Sandler*) co-counsel for defendant Washington International Insurance Company.

*Simpson Thatcher & Bartlett*, *LLP* (*Barry R. Ostrager*, *Mary K. Vyskocil*, and *Michael J. Garvey*) co-counsel for defendant Washington International Insurance Company.

Stanceu, Judge: Plaintiffs Sioux Honey Association, Adee Honey Farms, Monterey Mushrooms, Inc., The Garlic Company, and Beaucoup Crawfish of Eunice, Inc., dba Riceland Crawfish, Inc. brought this action against the United States, alleging that numerous statutory and regulatory violations by the United States Department of Commerce ("Commerce") and United States Customs and Border Protection ("Customs") impaired antidumping duty collections on products in new shipper reviews spanning more than a decade. As each plaintiff's name indicates, plaintiffs are domestic producers of honey, mushrooms, garlic, or crawfish. They claim that statutory and regulatory violations by Commerce and Customs denied them certain rights due them under the antidumping laws and, specifically, prevented them from obtaining the full amount of distributions to which they are entitled under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (repealed 2006).

Seeking monetary damages and equitable relief, plaintiffs also bring claims sounding in contract, tort (based on alleged negligence), and restitution (based on alleged unjust enrichment) against a large number of individual sureties (the "surety defendants"). Plaintiffs allege, *inter alia*, that the surety defendants issued, negligently, single-transaction customs bonds to importers of the merchandise at issue in the new shipper reviews and, on an unjust enrichment theory, claim a right to restitution of certain premiums that these importers paid to the sureties. *See* Compl. ¶¶ 9,11. Plaintiffs broadly direct their claims to all new shipper reviews that Commerce conducted during a period from January 1, 1995, when new shipper reviews began, to August 18,

2006, after which bonding to secure future antidumping duties on products subject to new shipper reviews was no longer permissible. *Id.* ¶¶ 2-4, 9, 11. They state, however, that "[a]ll or virtually all" of the bonds on which they are suing the surety defendants were issued for imports subject to one of twenty antidumping duty orders on imports from China and that the "vast majority" were issued on imports of Chinese fresh garlic, certain preserved mushrooms, freshwater catfish tail meat, and pure honey. *Id.* ¶ 4.[1] The complaint includes claims against fifty (50) unnamed surety defendants, which plaintiffs allege "[u]pon information and belief" to have "committed acts substantially similar to the acts by the named Surety Defendants." *Id.* ¶ 30.

Plaintiffs bring this action on their own behalf but also seek to represent the interests of a class consisting of

> [a]ny person or entity that (1) is an affected domestic producer ("ADP") under the . . . CDSOA . . . , under any antidumping order on imports from the People's Republic of China ("China") under which one or more new shipper administrative reviews were conducted between January 1, 1995 and August 18, 2006; or (2) would be an ADP under any such order if the CDSOA's requirement that to qualify as an ADP, a domestic interested party, must have supported the relevant petition to impose [antidumping] duties, is stricken from the CDSOA as unconstitutional.

*Id.* ¶ 77. The court dismisses all claims plaintiffs bring against the surety defendants. Some claims the court dismisses for lack of standing and others for failure to state a claim upon which relief can be granted. Accordingly, the court dismisses all surety defendants, named and unnamed, from this action. The court dismisses in the entirety those claims brought jointly against the surety defendants and the United States. The court declines to rule at this time on the

---

[1] Plaintiffs state that 107 of the 174 new shipper reviews Commerce conducted on Chinese products involved subject imports of Chinese fresh garlic, certain preserved mushrooms, freshwater catfish tail meat, and pure honey. Compl. ¶ 4.

numerous remaining claims, which plaintiffs assert solely against the United States and which challenge various actions, or failures to act, alleged on the part of Commerce and Customs.

## I. BACKGROUND

### A. Customs Bonding for Merchandise Subject to New Shipper Reviews

Upon request, Commerce conducts reviews to establish individual weighted-average dumping margins for foreign exporters or producers of merchandise subject to an antidumping duty order who did not export subject merchandise during the period of the investigation and are not affiliated with a producer or exporter who did so. 19 U.S.C. § 1675(a)(2)(B) (2006). From January 1, 1995 to April 1, 2006, the antidumping law permitted these "new shippers" to post bonds with Customs in lieu of cash deposits to serve, during the time required to conduct the review, as security for the future payment of antidumping duties. *See id.* § 1675(a)(2)(B)(iii) (suspended by Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632(a), 120 Stat. 780, 1165 (2006)). At the center of this action are customs bonds obtained from sureties by importers of Chinese products subject to new shipper reviews. *See id.* § 1623 (authorizing the collection of bonds for protection of the revenue and compliance with laws enforced by Customs); 19 C.F.R. § 113.62 (2009) (setting forth regulations and conditions for basic importation and entry bonds). Plaintiffs estimate that the "new shipper bonds" at issue in this case number in the hundreds and have "an estimated combined face value of several hundred million dollars." Compl. ¶ 2.

### B. Rights of Domestic Producers to Distributions under the CDSOA

The CDSOA directed Customs to deposit collected antidumping (and countervailing) duties into special accounts, to segregate those duties according to the relevant antidumping (or countervailing) duty order, and to distribute, on an annual basis, a ratable share of duties

collected for a particular unfairly-traded product to domestic producers who qualified as affected domestic producers ("ADPs") under the CDSOA as reimbursement for incurred qualifying expenditures.[2] 19 U.S.C. § 1675c(e) (repealed 2006). Although Congress repealed the CDSOA in 2006, it permitted the continued distribution of duties "on entries of goods made and filed before October 1, 2007." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).

### C.  Judicial Proceedings and Pending Motions

Plaintiffs commenced this action on April 7, 2009. Summons. With the consent of the parties, the court entered a scheduling order on July 1, 2009 and, on three occasions since then, granted unopposed motions to extend dates in the scheduling order. Order, July 1, 2009; Order Aug. 18, 2009; Order, Dec. 11, 2009; Order, Dec. 15, 2009.

All proceedings to date have involved three motions to dismiss the complaint. On September 4, 2009, the surety defendants, including the "Hartford defendants," moved to dismiss the claims against the surety defendants for lack of jurisdiction and failure to state a claim upon which relief can be granted.[3] Surety Defs.' Mot. to Dismiss & Mem. in Supp. of their Mot. to

---

[2] Customs initiates the annual Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment") distribution process by publishing a notice of intent to distribute CDSOA funds ("offsets"), along with a list of eligible affected domestic producers ("ADPs") as determined after receiving a list of parties potentially eligible, as compiled by the U.S. International Trade Commission. 19 U.S.C. § 1675c(d)(1),(2) (2000); 19 C.F.R. § 159.62(a) (2009). Customs requests certifications of eligibility from ADPs, which are subject to specific requirements, and then reviews and verifies the ADP certifications. *Id.*; 19 C.F.R. § 159.63 (2009).

[3] The "Hartford defendants," Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, and Hartford Insurance Company of the

(continued...)

Dismiss ("Surety Defs. Mot."); The Hartford Defs.' Mot. to Dismiss the Compl. ("Hartford Mot."); Mem. of P.& A. in Supp. of the Hartford Defs.' Mot. to Dismiss the Compl. ("Hartford Mem.") On September 25, 2009, the United States filed a corrected motion to dismiss plaintiffs' complaint. United States' Mot. to Dismiss Pls.' Compl. for Lack of Jurisdiction and for Failure to State a Claim upon which Relief May Be Granted ("United States Mot. to Dismiss").

Plaintiffs filed a corrected opposition to the three motions to dismiss on December 3, 2009. Pls.' Opp'n to Defs.' Mots. to Dismiss ("Pls. Opp'n"). Defendants filed replies on January 11, 2010. United States' Reply Br. in Supp. of its Mot. to Dismiss; Reply Mem. in Supp. of the Hartford Defs.' Mot. to Dismiss the Compl.; Reply Mem. in Supp. of Surety Defs.' Mot. to Dismiss. On December 31, 2009, the surety defendants filed a motion for oral argument, to which plaintiffs consented. Surety Defs.' Mot. for Oral Argument; Pls.' Statement of Consent to Surety Defs.' Mot. for Oral Argument. On February 2, 2010, plaintiffs filed a motion for leave to file a sur-reply to reply briefs of the United States and the surety defendants. Pls.' Mot. for Leave to File a Sur-Reply to Defs.' Replies in Supp. of their Mots. to Dismiss. On March 18, 2010, plaintiffs filed a motion for jurisdictional discovery relating to this court's subject matter jurisdiction over plaintiffs' claims against the United States. Pls.' Mot. for Jurisdictional Discovery.

---

[3](...continued)
Southeast, filed a separate motion to dismiss but join in the motion to dismiss filed by the other defendants and incorporate by reference the arguments made in support thereof. The Hartford Defs.' Mot. to Dismiss the Compl. 1 n.1 ("Hartford Mot."); Mem. of P.& A. in Supp. of the Hartford Defs.' Mot. to Dismiss the Compl. 1 n.1, 7 n.4 ("Hartford Mem.").

D.  Claims Brought Jointly Against the United States and the Surety Defendants

In Counts One, Two, and Six of the complaint, plaintiffs assert claims jointly against the United States and the surety defendants.  Compl. ¶¶ 89-117, 141-149.

In Count One, plaintiffs seek a declaratory judgment that they, although admittedly not named as parties in the contracts between the sureties and importers by which the new shipper bonds were issued, nevertheless are entitled to recover under those bond contracts as "intended third-party beneficiaries."  *Id.* ¶¶ 89-106.  Specifically, plaintiffs submit that the antidumping statute, in previously allowing importers of products subject to new shipper reviews to post bonds instead of cash deposits, and in incorporating the CDSOA, grants plaintiffs their status as third-party beneficiaries of those bond contracts.  *Id.* ¶¶ 98-99.

In Count Two, plaintiffs allege that surety defendants, including Hartford defendants, have asserted as a defense to government actions to recover on customs bonds that the CDSOA invalidated those bonds by making ADPs third-party beneficiaries to the bond contracts.  *Id.* ¶¶ 108-117.  They seek a declaration that neither the passage of the CDSOA nor their claimed status as third-party beneficiaries on the bonds that are the subject of this action had the effect of invalidating those bonds.  *Id.* ¶ 117.

In Count Six, plaintiffs allege that the sureties, along with Customs, took actions to compromise, modify, or discharge the liability of principals under bonds issued to importers of merchandise subject to new shipper reviews.  *Id.* ¶ 146.  Claiming that these actions could not be taken lawfully without their consent as third-party beneficiaries on the bonds, plaintiffs demand that the court declare these actions unlawful, set the actions aside, and enjoin any future such actions.  *Id.* ¶ 149.

### E.  Claims Brought Solely Against the Surety Defendants

In Counts Three, Four, and Five of the complaint, plaintiffs assert claims soley against the surety defendants.  Compl. ¶¶ 118-140.

In Count Three of their complaint, plaintiffs proceed against the surety defendants on a breach of contract theory, *see id.* ¶¶ 120-121, seeking a declaratory judgment that each surety defendant against which is pending a demand for bond performance that is no longer appealable has breached its obligation under the bond and thereby has injured plaintiffs and their proposed class as intended third-party beneficiaries.  *Id.* ¶ 121.1  They demand that the court award them damages in an amount to be determined at trial.  *Id.* ¶ 122.2.

In Count Four, plaintiffs bring claims on the contingency that any bond at issue in the case is determined to be void, unenforceable, compromised, or cancelled, *id.* ¶¶ 124-126, in which event they urge the court to order the surety defendants to "disgorge to the Court all premiums and collateral [] obtained for issuing the bond, plus accrued interest" and to hold these amounts in trust for the benefit of plaintiffs and the members of the proposed class.  *Id.* ¶¶ 127-128.

In Count Five, plaintiffs claim that the surety defendants were negligent in underwriting and deciding to execute the various bonds, *id.* ¶¶ 129-140, and, here also, seek an award of "appropriate damages to be paid by such defendants in an amount to be determined at trial."  *Id.* ¶ 140.

### F.  Claims Brought Solely Against the United States

Plaintiffs' remaining claims, stated in Counts Seven through Fifteen of the complaint, are brought against Customs and Commerce.  Compl. ¶¶ 150-235.  They allege that Customs denied

them due process by not allowing them to participate in the adjudications of administrative protests by the sureties. *Id.* ¶¶ 150-163 (Count Seven). Commerce, they allege, failed in some instances to issue to Customs required instructions to liquidate entries subject to new shipper reviews. *Id.* ¶¶ 164-173 (Count Eight). They claim that Customs unlawfully failed to liquidate some entries within six months of receiving liquidation instructions from Commerce and thereby allowed the entries to be deemed liquidated, thus denying plaintiffs the remedial benefits of the antidumping duty orders and reducing the amount of CDSOA distributions ("offsets") available to plaintiffs as ADPs. *Id*. ¶¶ 174-183 (Count Nine). They claim, further, that Customs failed to distribute some collected antidumping duties as required by the CDSOA, *id.* ¶¶ 184-190 (Count Ten), and failed to issue demands to sureties to recover duties under the new shipper bonds, *id.* ¶¶ 191-197 (Count Eleven). Based on a theory that the statutory power to compromise antidumping duties was transferred from Customs to Commerce in 1980, plaintiffs claim that Customs, in some instances, compromised antidumping duties owed in new shipper reviews although lacking legal authority to do so. *Id.* ¶¶ 198-205 (Count Twelve). They claim, further, that Customs wrote off as uncollectible certain antidumping duties without making an attempt to collect as required by 31 U.S.C. § 3711(a)(1) and 19 U.S.C. § 1631(a), among other provisions. *Id.* ¶¶ 206-215 (Count Thirteen). Plaintiffs claim that actions by Customs to cancel bonds and charges against bonds were unlawful because Customs failed to publish, as required by law, guidelines on its exercise of bond cancellation authority. *Id.* ¶¶ 216-225 (Count Fourteen). Finally, plaintiffs allege that Customs failed to authorize the Department of Justice to file collection actions against the sureties on certain new shipper bonds despite the requirement in the Customs regulations, 19 C.F.R. § 114.52, that Customs do so within ninety days after liability

has accrued. *Id.* ¶¶ 226-235 (Count Fifteen). On these claims brought solely against the United States, plaintiffs seek relief that, *inter alia*, would declare various challenged governmental actions to be contrary to law, set aside those various actions as contrary to law, order Customs and Commerce to cease certain practices, and order Customs to take various affirmative actions involving claims on the bonds. *Id.* ¶¶ 163, 173, 183, 190, 197, 205, 215, 225, 235.

## II.  DISCUSSION

Before the court are the three motions to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, the consent motion of the surety defendants for oral argument, and plaintiffs' motion for leave to file a sur-reply. In this Opinion and Order, the court considers, and dismisses, the claims that plaintiffs bring against the surety defendants, whether brought jointly against the surety defendants and the United States (as plaintiffs do in Counts One, Two, and Six of the complaint) or brought against the surety defendants alone (as in Counts Three, Four, and Five).

At this time, the court reserves decision on the motion of the United States with respect to dismissal of the remaining claims in the complaint, all of which are brought solely against the United States and stated in Counts Seven through Fifteen of the complaint. The court considers this piecemeal approach appropriate in the circumstances of this case, concluding that plaintiffs may not maintain any of their claims against the surety defendants and that the surety defendants should not be subjected to additional litigation costs and burdens while the pending motion to dismiss the remaining claims is decided. *See* USCIT Rule 1 (instructing that the Rules should be administered to secure the just, speedy, and inexpensive determination of every action).

Although the surety defendants have moved for oral argument on their motion to dismiss, the court concludes that oral argument is unnecessary and would impose further costs and burdens on these defendants.

### A.  Subject Matter Jurisdiction

As noted previously, the court in this Opinion and Order considers only claims brought solely against the sureties and those of the claims brought against the United States that are also brought, jointly, against the surety defendants.  The court concludes that the claims brought in Counts One, Two, and Six of the complaint, to the extent that they are asserted against the United States, arise under the antidumping laws and therefore would fall under the court's original subject matter jurisdiction as granted in 28 U.S.C. § 1581(i)(2) (2006).  The court concludes, however, for the reasons discussed herein, that plaintiffs lack standing to bring the claims in Counts Two and Six, which they assert jointly against the sureties and the United States.  Therefore, jurisdiction is lacking over these claims.

The court concludes that plaintiffs' claims against the surety defendants do not fall within any grant of original jurisdiction to the Court of International Trade, and plaintiffs do not argue to the contrary.[4]  Plaintiffs submit, instead, that the Court of International Trade has jurisdiction

---

[4] Original jurisdiction cannot lie under 28 U.S.C. § 1583, which provides:
   In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.
28 U.S.C. § 1583 (2006).  Against the surety defendants, plaintiffs are not bringing a cross-claim or counterclaim, nor are they asserting a "third-party action," which is in the nature of impleader. *See id.*; USCIT Rule 14.

over its claims against the United States according to 28 U.S.C. § 1581(i) (2006) and, on that basis, argue that the court may exercise supplemental jurisdiction over their claims against the surety defendants according to 28 U.S.C. § 1367 (2006) as made applicable to the Court of International Trade by 28 U.S.C. § 1585 (2006). Pls. Opp'n 62. They argue, in the alternative, that the court may hear these claims under a common law form of supplemental jurisdiction, *i.e.*, under the pendent or ancillary jurisdiction inherent to a court established under Article III of the United States Constitution. Pls. Opp'n 81-87.

Plaintiffs' theory that the court may exercise "common law" supplemental jurisdiction over their claims against the surety defendants under the Court of International Trade's inherent Article III authority is readily dismissed as meritless. Plaintiffs attempt to sweep into this action against the United States, which plaintiffs have brought under 28 U.S.C. § 1581(i), claims against private parties against whom no claim under the court's original jurisdiction could be maintained. Congress enacted 28 U.S.C. § 1367 after the Supreme Court rejected the exercise by federal courts of "pendent-*party* jurisdiction, that is, jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley v. United States*, 490 U.S. 545, 549 (1989). *Finley* held, specifically, that a district court may not exercise pendent-party jurisdiction against in-state defendants, on state law claims, in a suit brought against a government agency under the Federal Tort Claims Act, under which no claim against those defendants could have been asserted. *Id.* at 555. Previously, the Supreme Court held in *Aldinger v. Howard*, 427 U.S. 1, 12-19 (1975), that a district court may not exercise pendent, or ancillary, jurisdiction over a state-law claim brought against a defendant against whom no claim was cognizable under the Civil Rights Act, 42 U.S.C. § 1983.

Here, plaintiffs could not have asserted any claim against the surety defendants under the

federal statutes on which plaintiffs base their claims against the United States, *i.e.*, 28 U.S.C.

§ 1581(i) and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, neither of which

authorizes actions against private parties. Plaintiffs argue, nevertheless, that the exercise of

pendent-party jurisdiction in this case "is entirely consistent with the Supreme Court's decisions

in *Aldinger* and *Finley*, which addressed so-called 'pendant-party' jurisdiction before the

enactment of section 1367." Pls. Opp'n 82. This argument overlooks the essential point that

Congress enacted § 1367 after the Supreme Court recognized in *Finley*, if not in its prior decision

in *Aldinger*, limitations on the federal courts that preclude the exercise of any form of "common

law" supplemental jurisdiction in the circumstances of this case.

Plaintiffs' other theory, that the court may hear the claims against the sureties according

to the supplemental jurisdiction of 28 U.S.C. § 1367, is not so easily dismissed. Congress

established statutory supplemental jurisdiction by enacting 28 U.S.C. § 1367 as part of the

Judicial Improvements Act of 1990.[5] Judicial Improvements Act of 1990, Pub. L. No. 101-650,

§ 310(a), 104 Stat. 5089, 5113 (1990). It did so a decade after it enacted the Customs Courts

Act, which included 28 U.S.C. § 1585 as a component of the legislation establishing and

organizing the Court of International Trade. Customs Court Act of 1980, Pub. L. No. 96-417,

---

[5] In § 1367(a), Congress provided, with certain exceptions, that
in any civil action of which the district courts have original jurisdiction, the
district courts shall have supplemental jurisdiction over all other claims that are so
related to claims in the action within such original jurisdiction that they form part
of the same case or controversy under Article III of the United States Constitution.
Such supplemental jurisdiction shall include claims that involve the joinder or
intervention of additional parties.
28 U.S.C. § 1367(a) (2006).

§ 201, 94 Stat 1727, 1728 (1980).  Acknowledging that § 1367 specifically identifies only the district courts, plaintiffs argue that the Court of International Trade possesses the supplemental jurisdiction of § 1367 by operation of § 1585, under which "[t]he Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."  28 U.S.C. § 1585.  Summarized briefly, plaintiffs' theory is that the grant to the Court of International Trade of  "all the powers in law and equity," as conferred upon the district courts by statute, necessarily includes the grant of the "power" to exercise the supplemental jurisdiction of § 1367, which codified and expanded upon the "common-law" powers to exercise supplemental jurisdiction that were inherent in the district courts as courts established under Article III.  Pls. Opp'n 66-68.

The Hartford defendants disagree, arguing that the structure of the Customs Courts Act is inconsistent with plaintiffs' theory of supplemental jurisdiction.  Hartford Mem. 8-13.  They point out that § 1585 does not mention jurisdiction and that Congress addressed the jurisdiction of the newly-formed Court of International Trade in other sections of the Customs Courts Act (specifically, §§ 1581-1583).  *Id.* at 9-12.  The court is not persuaded by this argument.  Within the Customs Courts Act, §§ 1581 through 1583 defined the new court's *original* jurisdiction, a concept distinct from the discretionary power of an Article III court to exercise jurisdiction over claims that are pendent or ancillary to claims brought under that original jurisdiction, *i.e.*, those claims arising out of the same Article III case or controversy as the claims brought under a federal court's original jurisdiction.  *See* 28 U.S.C. §§ 1581-1583.  In support of their argument, the Hartford defendants posit that "[i]f 'power' meant 'jurisdiction,' then § 1585 would incorporate every provision that creates jurisdiction in the district courts."  Hartford Mem. 12.

But because original jurisdiction and supplemental jurisdiction are different concepts, plaintiffs' jurisdictional theory does not require that § 1585 be construed to expand the original jurisdiction of the Court of International Trade or to signify that the court is affected by future changes Congress may make to the original jurisdiction of the district courts. Any such readings of § 1585 would render meaningless the Customs Courts Act's carefully drawn jurisdictional division between the Court of International Trade and the district courts.

The legislative history of the Customs Courts Act reveals that Congress had more than one purpose in mind when crafting § 1585. The bill in the 96th Congress that later became the Customs Courts Act, H.R. 7540, contained § 1585 in the form in which it was later enacted and in which it remains in effect today. H.R. 7540, 96th Cong. (2d Sess. 1980). The House Report discusses the purpose of § 1585 within the larger context of statutory revisions "to clarify the present status, jurisdiction and powers" of the predecessor court, the U.S. Customs Court. H.R. Rep. No. 96-1235, at 20 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3731. Apparently referring to original jurisdiction, the report explains that a purpose of H.R. 7540 was to provide "aggrieved parties better access to judicial review of a civil action arising out of an import transaction" and that "[s]uch access is not presently assured due to jurisdictional conflicts caused by the ill-defined division of jurisdiction between the Customs Court and the federal district courts." *Id.* In the following sentence, the report addresses the "status" and "powers" of the newly created court in language that sheds some light on one of the intended purpose of § 1585: "Most importantly, H.R. 7540 perfects the status of the Customs Court by providing it with *all the necessary remedial powers* in law and equity possessed by other federal courts established under Article III of the Constitution." *Id.* (emphasis added). Thus, this portion of the House

Report, rather than discussing the purpose of § 1585 in terms suggesting supplemental jurisdiction, discusses that purpose as one of providing the new court all the "necessary" powers to effect remedies commensurate with those of other Article III courts.

Although the emphasis the House Report placed on remedial powers is indicative of congressional intent, it would be a mistake to conclude that granting powers that are remedial in nature was the *only* purpose Congress sought to fulfill by enacting § 1585. The language Congress chose for § 1585 is not confined to remedial powers, and other language in the House Report suggests a broader intent by discussing the purpose of § 1585 as follows:

> Proposed section 1585 provides that the Court of International Trade shall possess all the powers in law and equity of, or conferred by statute upon, a district court. In the past, there has been some doubt as to whether or not the Customs Court possessed this *full judicial authority*. It is the Committee's intent to make clear that the Customs Court's successor, the United States Court of International Trade, does possess the same *plenary powers* as a federal court [*sic*] district court.

H.R. Rep. No. 96-1235, at 50, *reprinted in* 1980 U.S.C.C.A.N. at 3762 (emphasis added). This language, including in particular the use of the terms "full judicial authority" and "plenary powers," strongly counsels against a narrow reading of § 1585 under which the provision is confined in scope to remedial powers in law and equity.

Admittedly, neither the text of § 1585 nor the House Report reveals a specific intent with respect to common-law supplemental jurisdiction, a form of jurisdiction that might be considered to reside in the Court of International Trade even without § 1585, as a result of the establishment of the Court of International Trade under Article III. *See* 28 U.S.C. § 251(a) (2006). Moreover, the powers of a district court in law and equity, which Congress appears to have considered to be too numerous to identify specifically in § 1585, would include some that are neither remedial nor

associated with the proper exercise of supplemental jurisdiction by an Article III court.  For these reasons, it is not a certainty that Congress, in crafting § 1585, necessarily *had* to have been referring to the authority to exercise supplemental jurisdiction as it existed in 1980, at the time the Customs Courts Act was enacted.  Nevertheless, the House Report suggests that such powers may have been among those Congress contemplated when drafting § 1585.

As the court observed above, the House Report indicates that § 1585 was intended to refer to remedial powers, among other powers.  *See* H.R. Rep. No. 96-1235, at 20, *reprinted in* 1980 U.S.C.C.A.N. at 3731.  Because it refers to the powers in law and equity of Article III trial courts in existence at the time it was enacted, *i.e.*, the district courts, § 1585, when construed according to the House Report, would grant the Court of International Trade the powers to order, for example, monetary relief extending beyond the powers expressly granted by 28 U.S.C. § 2643(a)(2) to enter money judgments "for or against the United States or any other party in any counterclaim, cross-claim, or third-party action under section 1583 of this title."  28 U.S.C. § 2643(a)(2) (2006).  In that regard, the court notes that § 2643(a) does not expressly *limit* the Court of International Trade's powers to enter money judgments to those specified in that subsection.  In contrast, § 2643(c)(1) provides that the Court of International Trade has general powers to order any *non*-monetary form of relief that is appropriate to a civil action but makes that general authority subject to the four specific exceptions stated in § 2643(c)(2)-(5).  See *id*. § 2643(c).  If it were presumed that § 1585 was not intended to include the power to exercise supplemental jurisdiction as exercised by district courts, a question would arise as to why the House Report saw the need to clarify that the powers conferred by § 1585 included *any* remedial powers, when Congress in § 2643 already provided for a broad range of remedial powers and

expressed those powers in terms relating to the Court of International Trade's original jurisdiction.[6] It is at least plausible to conclude that the powers to order monetary relief as granted by § 1585 extending beyond those specifically identified in § 2643(a) were intended for the exercise of common-law supplemental jurisdiction, as there appear to be no other instances in which such powers would be required.

For these various reasons, the court concludes that the Court of International Trade has the power to exercise common-law supplemental jurisdiction under 28 U.S.C. § 1585, when read in conjunction with § 251(a), which provides that the Court of International Trade is established under Article III. The next question, then, is whether, as plaintiffs argue, §§ 1367 and 1585 together confer upon the Court of International Trade the authority to exercise the statutory supplemental jurisdiction that § 1367 describes. Although it is a close question, the court concludes that they do. The court reaches this decision based largely on the broad language and purposes of § 1585, as apparent in the plain meaning of the provision and as discussed in the legislative history of the Customs Courts Act.

In resolving the jurisdictional issue posed by plaintiffs' claims against the sureties, the court has considered the reference made by the Court of Appeals for the Federal Circuit ("Court of Appeals") in *B-West Imports, Inc. v. United States*, 75 F.3d 633, 635 (Fed. Cir. 1996), that § 1367(a) is "made applicable to the Court of International Trade by 28 U.S.C. § 1585." While instructive, the reference need not be read as constituting a controlling precedent on the

---

[6] Those expressly granted remedial powers included, in § 2643(a), powers to order the monetary relief that would be needed in all cases heard under the court's original jurisdiction as provided in 28 U.S.C. §§ 1581 through 1583, and general powers (subject to four exceptions that apply in specific instances in which the Court of International Trade exercises its original jurisdiction) to award any form of non-monetary relief.

jurisdictional question presented here. The reference occurs only in a parenthetical, and no reasoning is presented on the supplemental jurisdiction issue. The parenthetical appears in a description of the decision being affirmed below, *id*., in which the Court of International Trade rejected on the merits a claim that revocation of an import permit by the Bureau of Alcohol, Tobacco and Firearms violated the Takings and Due Process clauses of the Fifth Amendment. *B-West Imports, Inc. v. United States*, 19 CIT 303, 315 n.15, 880 F. Supp. 853, 864-65 n.15 (1995). In the decision below, the Court of International Trade had held that jurisdiction over the Fifth Amendment claim existed either under 28 U.S.C. § 1581(i) (if the import restrictions at issue were viewed as an "embargo") or alternatively under the supplemental jurisdiction granted by 28 U.S.C. § 1367. *Id*.

Even though it appears to be less than a binding precedent, the reference to the Court of International Trade's supplemental jurisdiction in *B-West Imports* is nevertheless relevant to the narrow jurisdictional question presented here. As it is in any case, the Court of Appeals in *B-West Imports* was under an obligation to determine the Court of International Trade's, and therefore its own, subject matter jurisdiction over the claim in question (the lack of which jurisdiction could not be waived) before affirming the Court of International Trade's rejection of that claim on the merits. *See, e.g., Dowd v. United States*, 713 F.2d 720, 726 (Fed. Cir. 1983). Therefore, the reference to the Court of International Trade's supplemental jurisdiction in *B-West Imports*, 75 F.3d at 635, however brief, signifies at least that the Court of Appeals did not

disagree with the stated premise that § 1367(a) is made applicable to the Court of International

Trade by 28 U.S.C. § 1585.[7]

Read according to plain meaning, § 1585 confers on the Court of International Trade

those district court powers that expressly are conferred by statute and those that are not.  The

latter must be seen as those recognized in centuries of Supreme Court jurisprudence addressing

the nature and scope of the powers of Article III courts.  The common-law authority to exercise

supplemental jurisdiction has been recognized in Supreme Court jurisprudence as stemming from

the power of an Article III court to decide an entire case or controversy, which in some

circumstances may encompass a state law claim that forms part of the same constitutional "case"

as does a claim arising under the Constitution, laws, or treaties of the United States.  *See Finley*,

490 U.S. at 548-49 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

With respect to powers resulting from statutes, § 1585 provides that the Court of

International Trade "shall possess *all* the powers in law and equity of, *or as conferred by statute

upon*, a district court of the United States."  28 U.S.C. § 1585 (emphasis added).  Had Congress

---

[7] The Hartford defendants argue that the Court of Appeals for the Federal Circuit, since *B-West Imports, Inc. v. United States*, 75 F.3d 633 (Fed. Cir. 1996), "[t]ellingly" has "expressly declined to address whether § 1367 applies to the [Court of International Trade]."  Hartford Mem. 10 n.7. (citing *Salmon Spawning & Recovery Alliance v. U.S. Cust. & Border Prot.*, 550 F.3d 1121, 1133 n.12 (Fed. Cir. 2008), and *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1053 n.2 (Fed. Cir. 1996)).  In neither case, however, was there even a need to decide the question of the Court of International Trade's supplemental jurisdiction under § 1367.  In *Salmon Spawning*, the Court of Appeals declined to consider a jurisdictional question that did not affect the outcome of the appeal and that had not been fully briefed.  *Salmon Spawning*, 550 F.3d at 1133 n.12.  Similarly, there was no need to consider supplemental jurisdiction in *Hanover*, even though the Court of International Trade had cited § 1367 as well as its inherent authority to determine the effect of, and to enforce, its own judgments.  *See* 82 F.3d at 1053 n.2.  There, the Court of Appeals, citing 28 U.S.C. § 1585, held that the Court of International Trade, like the district courts, "has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments."  *Id.* at 1054.

not included the phrase "or as conferred by statute upon," the Court of International Trade, at least arguably, still would possess both the powers in law and equity that are expressly granted the district courts by statute and those that are not. That much seems apparent from the use of the unqualified words "all the powers in law and equity," which encompass the plenary powers of district courts, however derived.

Although it might be argued that the words "shall possess all the powers in law and equity of, or as conferred by statute upon" must be construed as "frozen in time," *i.e.*, as granting only those powers already granted to district courts as of the 1980 date of enactment of the Customs Courts Act, such a reading would give no effect to the words "or as conferred by statute upon" as used in § 1585. Moreover, this narrow reading soon would lead to an outcome in which the "powers" of the Court of International Trade and the district courts would not be in parallel. Such a result would appear to frustrate the intent of § 1585 as clarified by the House Report, which spoke of granting the newly-created court the "full judicial authority" and "plenary powers" of the district courts, including those as conferred upon the district courts by statute. *See* H.R. Rep. No. 96-1235, at 50, *reprinted in* 1980 U.S.C.C.A.N. at 3762. This is not to suggest that Congress could not confer a power solely on the district courts by excepting explicitly the Court of International Trade and confer such a power without repealing or amending § 1585. In that situation, the obligation to give effect to the later-in-time statute would dispel any notion that such power, by operation of § 1585, would extend to the Court of International Trade. In contrast to such a situation, the legislative history of the Judicial Improvements Act of 1990, which included § 1367, reveals no intent specific to the question of whether § 1367 supplemental jurisdiction may be exercised by the Court of International Trade.

To the contrary, the report of the House Committee on the Judiciary associated with the Judicial Improvements Act of 1990 states that, in light of the Supreme Court's holding in *Finley*, legislation "is needed to provide the *federal courts* with statutory authority to hear supplemental claims." H.R. Rep. No. 101-734, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6874 (emphasis added). No reason is given for why the text of the new provision mentions only the district courts. *See id.* Thus, § 1585, for which a general "frozen in time" construction would not serve the intended purpose as indicated in the plain language and legislative history, may be read in harmony with § 1367, for which Congress displayed no specific intent to preclude exercise by the Court of International Trade of the newly resulting, statutory "district court" power. Section 1367 established that statutory power by codifying, defining, expanding in some ways, and qualifying in other ways, supplemental jurisdiction as it had existed prior to the 1990 enactment. *See id.* at 27-30, 1990 U.S.C.C.A.N. at 6873-76. The court concludes that § 1585 and § 1367, when construed together and according to their respective purposes as revealed in legislative history, confer upon the Court of International Trade the statutory form of supplemental jurisdiction that resulted from the 1990 enactment. Although it does not appear to constitute a binding precedent, the reference to supplemental authority in *B-West Imports* provides further support for this conclusion. *See B-West Imports*, 75 F.3d at 635.

The court may exercise supplemental jurisdiction according to 28 U.S.C. § 1367 over claims plaintiffs assert against the surety defendants that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Plaintiffs' claims against the surety defendants, including those brought jointly against the surety defendants and the United

States, arise out of the customs bonds that are the main focus of their action. With respect to defendant United States, plaintiffs contest, under 28 U.S.C. § 1581(i) and the APA, various government actions and inactions involving those same bonds. Because plaintiffs' claims against the surety defendants and many of their claims against the United States arise out of the same case or controversy, the court concludes that it possesses § 1367 supplemental jurisdiction that is sufficient to allow it to examine further, for purposes of ruling on the motions to dismiss, the claims against the sureties. The court also concludes, however, that plaintiffs lack standing according to Article III with respect to a number of these claims, as to which, strictly speaking, there is no justiciable case of controversy for purposes of Article III or § 1367. In contrast, the claims plaintiffs bring in Counts One and Five of the complaint may not be dismissed for lack of standing. The court examines below each of the claims plaintiffs bring against the sureties and sets forth the reasons that each claim must be dismissed.

B.  Analysis of Plaintiffs' Individual Claims Against the Surety Defendants

Dismissal for lack of standing is required if a plaintiff cannot establish facts under which the court may find the existence of a case or controversy justiciable under Article III. Establishing standing according to Article III requires a plaintiff to demonstrate that it suffered an "injury in fact," which the Supreme Court has described as an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

Dismissal for failure to state a claim upon which relief can be granted is required if plaintiffs' factual allegations are not "enough to raise a right to relief above the speculative level

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

   1.  Declaratory Judgment that Plaintiffs Are Intended Third-Party Beneficiaries (Count One)

In Count One of the complaint, plaintiffs seek a declaratory judgment that they and the class they seek to represent are "intended third-party beneficiaries of each new shipper bond that secures the payment of [antidumping] duties on imports subject to the relevant NSR [*i.e.*, new shipper review] Order, and as such have rights and benefits under each such bond as if each were a named party to such bond." Compl. ¶ 106. Plaintiffs cite a section of the Restatement of Contracts under which, in certain circumstances, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties.[8] *Id.* ¶ 93 (citing *Restatement (Second) of Contracts* § 302 (1981)). Despite their apparent reliance upon principles embodied in the Restatement of Contracts which refers to the intention of parties, plaintiffs concede as a factual matter that the bond contracts on which they seek to enforce rights are "silent as to the parties' intention to benefit a third party."[9] *Id.* ¶ 96.

----

[8] In pertinent part, the restatement provides:
Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
    (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
    (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
*Restatement (Second) of Contracts* § 302 (1981).

[9] Plaintiffs submit that the issue of whether they are intended third-party beneficiaries is to be decided by "Federal common law." Compl. ¶ 95. Because plaintiffs seek to represent a
(continued...)

Plaintiffs argue, however, that "[w]here, as with the new shipper bonds, a contract mandated by federal law is silent as to the parties' intention to benefit a third-party, it is appropriate to inquire into the governing statute and its purpose on the issue of intent." *Id*. In essence, plaintiffs claim that two specific provisions of the antidumping law compel the court to conclude that they are intended third-party beneficiaries under the bonds they identify as being at issue in this case. First, they submit that "[b]y allowing the estimated AD duty deposit requirement on imports from exporters undergoing a NSR to be met by a new shipper bond, Congress intended that the domestic producers being protected by a specific AD order would be intended third-party beneficiaries of all new shipper bonds issued to secure the payment of AD duties under that order." *Id*. ¶ 98. Second, they state that "[t]he passage of the CDSOA confirmed that Plaintiffs and Class members under each of the China NSR Orders are intended third-party beneficiaries of all new shipper bonds issued on imports subject to that order." *Id*. ¶ 99. The court will consider each of these legal theories in turn.

The since-suspended provision of the antidumping law that allowed new shippers to post bonds, 19 U.S.C. § 1675(a)(2)(B)(iii), was added by the Uruguay Round Agreements Act among

---

[9](...continued)
large class of plaintiffs and are suing a large number of defendants, including some fifty defendants whose identities they do not know, their claims against the sureties that are grounded in contract law may raise choice of law issues. However, the court need not delve into a choice of law analysis in this case because plaintiffs concede the fact that the bond contracts on which they seek to sue are silent as to any intention to benefit them. *See id*. ¶ 96. Therefore, the principles summarized in the Restatement of Contracts are unavailing to plaintiffs absent the effect they attribute to provisions in the antidumping laws.

a set of procedures establishing new shipper reviews.[10]  Because it refers to "the Customs

Service" and to "bond or security . . . for each entry," the provision must be read in conjunction

with 19 U.S.C. § 1623, under which Customs exercises general authority to administer

importation and entry bonds.  *See* 19 U.S.C. § 1623; 19 C.F.R. § 113.62.  As plaintiffs appear to

acknowledge, the named parties to the bond contracts, according to the implementing regulations

for § 1623, are the surety, the principal (*i.e.*, the importer), and Customs, as an intended third-

party beneficiary.  Compl. ¶¶ 90, 92; 19 C.F.R. Part 113.  Plaintiffs argue that

§ 1675(a)(2)(B)(iii), read in the context of other provisions of the antidumping law, compels the

conclusion that they, as petitioners or domestic like product producers, are also intended third-

party beneficiaries of those contracts.  *Id*. ¶¶ 98-99.  However, neither § 1675(a)(2)(B)(iii) nor

any other provision governing new shipper reviews provides or suggests that Congress was

altering the ordinary relationships among parties to the customs bonds that were authorized in

lieu of cash deposits.  *See* 19 U.S.C. § 1675(a)(2)(B).

The court finds nothing in the legislative history of the new shipper review provisions

supporting plaintiffs' argument that Congress made them intended third-party beneficiaries of

bond contracts.  The Statement of Administrative Action ("SAA") associated with this legislation

explains that the institution of new shipper reviews was intended to solve a specific problem

identified in the Uruguay Round negotiations.  The problem was that all merchandise covered by

---

[10] The provision reads as follows:
    The administering authority shall, at the time a review under this subparagraph
    is initiated, direct the Customs Service to allow, at the option of the importer, the
    posting, until the completion of the review, of a bond or security in lieu of a cash
    deposit for each entry of the subject merchandise.
19 U.S.C. § 1675(a)(2)(B)(iii) (2006) (suspended by Pension Protection Act of 2006, Pub. L.
No. 109-280, § 1632(a), 120 Stat. 780, 1165 (2006)).

an antidumping duty order and exported from a particular country is subject to antidumping duty liability, even though no individual margin can be established for shippers who did not export subject merchandise during the period of investigation and who were not affiliated with any producer or exporter in the exporting country who did so. As the SAA explains, "[d]uring the negotiations, there was an attempt to exempt new shippers from duty liability by requiring an entirely new antidumping investigation (along with a separate finding of injury) for each new shipper." *The Uruguay Round Agreements Act, Statement of Administrative Action*, H.R. Doc. No. 103-316 (Vol. 1), at 876 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4203 ("SAA"). The SAA explains, further, that "[t]he United States agreed to a more reasonable proposal . . . to provide new shippers with an expedited review that will establish individual dumping margins for such firms on the basis of their own sales." *Id.*

The argument that the CDSOA confirmed plaintiffs' status as intended third-party beneficiaries fares no better. The CDSOA, in 19 U.S.C. § 1675c, does not mention bonds or another form of security for the collection of antidumping duties. To the contrary, the CDSOA provides that antidumping duties assessed on entries of merchandise subject to antidumping duty orders and findings are to be deposited into special accounts, from which Customs makes distributions each year to ADPs for qualifying expenditures. 19 U.S.C. § 1675c(e) (repealed 2006). Contrary to the claim stated in Count One, the court concludes that nothing in the CDSOA provides or suggests that ADPs are intended third-party beneficiaries of customs bonds issued to importers of merchandise involved in new shipper reviews, or any other customs bonds.

The court finds nothing in 19 U.S.C. § 1623 or the regulations effectuating § 1623, codified as 19 C.F.R. Part 113, providing that any party other than Customs is to be an intended

third-party beneficiary to a bond required under these authorities. *See* 19 U.S.C. § 1623;

19 C.F.R. § 113.62. Instead, § 1623 delegates authority to prescribe the forms of bonds, bond

conditions, and limits of liability. 19 U.S.C. § 1623(b)(1). Authority is also granted to approve

sureties. *Id.* § 1623(b)(2). There is no mention in § 1623 of any obligation or discretion to create

rights in any private party or confer a benefit upon a private party. Nor do the Customs

regulations, which impose jointly and severally on the principal and surety the obligation to

deposit estimated duties and pay additional duties later determined to be owed, identify any

beneficial interest such as that postulated by plaintiffs. *See* 19 C.F.R. § 113.62(a)(1)(i)-(ii). The

principal and surety are jointly liable to Customs, not a third party, in the event of default of the

obligation to deposit estimated duties. *See id.* § 113.62(*l*)(4).

Ruling on the motions to dismiss the claim in Count One has required the court to

consider this claim on the merits. In doing so, the court concludes that neither the new shipper

provisions in the antidumping law, the CDSOA provisions, 19 U.S.C. § 1623, nor 19 C.F.R.

§ 113.62 makes plaintiffs intended third-party beneficiaries of the customs bonds that they seek

to place at issue in this case. Therefore, Count One of plaintiffs' complaint against the surety

defendants and the United States must be dismissed according to USCIT Rule 12(b)(5) for failure

to state a claim upon which relief can be granted. The court, even when assuming all factual

allegations made in Count One are true, cannot conclude that plaintiffs have any right to relief on

these claims. *See Bell Atlantic Corp*, 550 U.S. at 555.

2. Declaratory Judgment that New Shipper Bonds Were Not Voided by CDSOA (Count Two)

In support of the claim in Count Two of their complaint, plaintiffs state that defendant

sureties Hartford and International Fidelity Insurance Company ("IFIC") have asserted as a

defense to government actions to recover on customs bonds that the CDSOA invalidated those bonds by making ADPs third party beneficiaries to the bond contracts. Compl. ¶¶ 108-112. Plaintiffs, "[t]o prevent the Surety Defendants from refusing to honor their obligations under the new shipper bonds on the basis of this defense," *id*. ¶ 116, the "CDSOA Bond Voidance Defense," *id.* ¶ 108, seek a declaratory judgment that neither the passage of the CDSOA nor their claimed status as third-party beneficiaries on the bonds that are the subject of this action had the effect of invalidating those bonds. *Id.* ¶ 117.

Plaintiffs' claim in Count Two seeks to confirm, through a declaratory judgment, the validity of certain contracts under which they seek, in other claims brought by their complaint, to assert various rights. But as discussed above, plaintiffs are neither named parties nor intended third-party beneficiaries under the bond contracts they identify. The surety defendants are parties to those contracts, but plaintiffs, lacking status as intended third-party beneficiaries, may not assert rights under those contracts. The other parties to those contracts, who are the principals on the bonds and the importers of merchandise subject to antidumping duty orders and new shipper reviews, are neither parties to this action nor in privity with plaintiffs. The court concludes in these circumstances that plaintiffs have no standing under Article III of the Constitution to seek a declaratory judgment confirming the validity of the bond contracts they seek to place into controversy. Pursuant to USCIT Rule 12(b)(1), the court dismisses Count Two of the complaint for lack of jurisdiction.

### 3.  Demand for Declaratory Judgment and Damages for Breach of Contract (Count Three)

In Count Three of their complaint, plaintiffs demand a declaratory judgment that each surety defendant against whom is pending a demand for bond performance that is no longer appealable has breached its obligation under the bond and thereby has injured plaintiffs and their proposed class as intended third-party beneficiaries.  Compl. ¶ 122.1.  They demand that the court "[a]ward Plaintiffs and Class members that are intended third-party beneficiaries of such bond appropriate damages to be paid by such defendant in an amount to be determined at trial." *Id.* ¶ 122.2.

Again, plaintiffs are not third-party beneficiaries of the bond contracts on which they seek to assert rights to declaratory relief and damages for breach of contract.  They therefore lack standing for the claims they bring in Count Three, which must be dismissed under USCIT Rule 12(b)(1).

### 4.  Demand for Recovery of Bond Premiums on an Unjust Enrichment Theory (Count Four)

Plaintiffs address Count Four in their complaint to the possibility that any of the bonds that they seek to place at issue in this case, *i.e.*, the new shipper bonds, is "adjudged to be void, unenforceable, or otherwise compromised or cancelled."  Compl. ¶ 125.  For any such bond, plaintiffs claim to be entitled to the premiums that the principal paid to the surety defendants. *See id*.  Plaintiffs' stated theory is that

> it would be inequitable to allow the Surety Defendant that issued the bond to retain the premiums and/or collateral it received for issuing that bond, because this would unjustly enrich that defendant at the expense of Plaintiffs and Class members, which, as the intended third-party beneficiaries of that bond . . . would have received any payments made under the bond, had it been enforceable.

*Id.* The surety defendants argue, in support of dismissal of this claim, that no unjust enrichment action could be maintained on the facts as pled because the amounts plaintiffs seek to recover were paid by the principals on the bonds, not the plaintiffs. Surety Defs. Mot. 28. As the surety defendants also argue, plaintiffs' claim fails because plaintiffs are not third-party beneficiaries on the bond contracts. *Id.* at 27. Because plaintiffs are not third-party beneficiaries, they lack standing to assert their unjust enrichment claim. Because standing is jurisdictional, the court must dismiss the unjust enrichment claim in Count Four according to USCIT Rule 12(b)(1) and therefore does not reach the merits of the unjust enrichment claim for purposes of deciding the alternate motions to dismiss according to USCIT Rule 12(b)(5).

 5.  Claim for Damages Due to Alleged Negligence by the Sureties in Issuing Bonds (Count Five)

In Count Five, plaintiffs demand that the court hold the surety defendants liable for causing injury to plaintiffs and their proposed class, alleging, in effect, that the surety defendants negligently issued new shipper bonds to importers who were not creditworthy. Compl. ¶¶ 129-140. With respect to a duty of care, plaintiffs posit that each surety defendant "had a duty to each Plaintiff and Class member to use due care under the circumstances in issuing the new shipper bonds." *Id.* ¶ 139. Their theory as to causation-in-fact is that absent the issuance of these bonds, the importers could not have imported subject merchandise at "steeply dumped prices," which merchandise they claim to have caused each of them, and the members of the class they seek to represent, "hundreds of millions of dollars in sales revenue and substantial shares of the relevant U.S. markets." *Id.* ¶ 137. Their theory as to proximate cause is that the injury they suffered was clearly foreseeable from the sureties' issuance, without "due care," of single-transaction customs bonds to importers that did not meet what plaintiffs claim to be industry-

wide underwriting standards for such bonds. *Id.* ¶¶ 134, 139. Plaintiffs seek "appropriate damages to be paid by such defendants in an amount to be determined at trial." *Id.* ¶ 140.

The court is aware of no authority or principle under which it could conclude that the surety defendants, on the facts plaintiffs allege, owed plaintiffs a duty of care and thereby assumed liability for "negligently" issuing customs bonds to importers of subject merchandise involved in new shipper reviews. The court could not find such a duty without acting legislatively. Moreover, the injuries plaintiffs allege to have suffered, *see id.* ¶ 137, are the very types of injuries to domestic industries that the antidumping duty laws are intended to redress through the administration of an antidumping duty order (and, for the time period at issue in this case, through the CDSOA). Plaintiffs appear to be inventing a new tort that would provide them a private remedy for claimed injurious effects caused by the presence in the U.S. market of unfairly traded imports. The remedy plaintiffs seek to enforce directly against the private-party sureties would be in addition to the remedies already afforded by the antidumping statute for those subject imports and, as a practical matter, would act to discourage those imports. That the imports in question were subject to antidumping duty orders–a fact plaintiffs readily admit–demonstrates that plaintiffs already have availed themselves of their statutory remedies.

Plaintiffs' negligence claims are also flawed with respect to a theory of "fault." Plaintiffs' claims essentially are that the surety defendants are liable to plaintiffs for allowing U.S. importers to import subject merchandise who, not being creditworthy, should not have been permitted to do so, even though Congress explicitly authorized the posting of a bond in the instance of a new shipper review and thus intended importers to have an alternative to the posting of a cash deposit. *See* 19 U.S.C. § 1675(a)(2)(B)(iii). Moreover, in advancing their negligence

claims, plaintiffs would ignore the role of the surety in the import transaction. The existence of

the bond contract addresses a possible inability of an importer to satisfy the duty obligation.

A surety that "negligently" issues a single-transaction bond to an importer who is not

creditworthy bears the entire risk of the consequences of the importer's default on the duty

obligations, up to the limit of liability on the bond.[11] *See* 19 C.F.R. § 113.62.

In summary, there is no basis in law to support plaintiffs' argument that the surety

defendants owed a duty of care to plaintiffs with respect to the issuance of bonds to importers

with less than perfect creditworthiness. The court concludes, therefore, that plaintiffs'

negligence claims against the sureties, though creatively formulated, must be dismissed

according to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted.

The court, even when assuming all factual allegations made in Count Five are true, cannot

conclude that plaintiffs have any right to relief on these claims. *See Bell Atlantic Corp*., 550 U.S.

at 555.[12]

6. Claim Against Sureties for Compromise, Modification, or Discharge (Count Six)

In Count Six of the complaint, plaintiffs allege that the sureties, along with Customs,

have acted unlawfully in compromising, modifying, or discharging liability of principals under

---

[11] Additionally, the injury of which plaintiffs complain, the economic effects of the unfairly traded imports in the marketplace, also occurs when creditworthy importers bring in subject merchandise. Plaintiffs' demand for a remedy in Count Five thus appears to hinge on an allegation that they were *more* injured than they would have been had the U.S. market contained only subject merchandise imported by creditworthy importers.

[12] Although it can be argued that plaintiffs, not being owed a duty of care, lack standing to bring the claims in Count Five of the complaint, plaintiffs identify injuries caused by the presence of unfairly traded imports in the U.S. marketplace, *see* Compl. ¶ 137, and in this respect may be said to have incurred an "injury in fact" to a "legally protected interest." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

bonds issued to importers of merchandise subject to new shipper reviews. Compl. ¶ 146. With respect to Customs and the surety defendants, plaintiffs demand that the court declare these alleged actions unlawful, set the alleged actions aside, and enjoin future such actions. *Id.* ¶ 149. Plaintiffs premise their right to demand this relief on their status as intended third-party beneficiaries on the bonds. *See id.* ¶¶ 142, 145, 147. They maintain that Customs and the sureties lacked any authority to compromise, modify, or discharge any liability on a new shipper bond "without the consent of the Plaintiffs and the Class members that are intended third-party beneficiaries of that bond." *Id.* ¶ 145. The claims in Count Six must be dismissed according to USCIT Rule 12(b)(1) because plaintiffs, lacking the status of intended third-party beneficiaries on the bonds plaintiffs describe in this action, have no standing to enforce the rights under those bonds that they seek to assert in this count of their complaint.

### III. CONCLUSION

Having considered all arguments made by plaintiffs in opposition to dismissal of the claims brought against the surety defendants, the court will grant plaintiffs' motion to file a sur-reply to defendants' reply briefs. After consideration of the motions to dismiss and arguments in opposition, and upon due deliberation, the court deems it necessary to dismiss all claims brought against the surety defendants in this action, whether brought jointly against the surety defendants and the United States or brought solely against the surety defendants. For the reasons discussed in this Opinion and Order, the claims in Counts One, Two, Three, Four, Five, and Six of the complaint must be dismissed. The court reserves decision on the motion of the United States to dismiss Counts Seven through Fifteen. The court denies as moot the motion of the surety defendants for oral argument.

## ORDER

Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that the motion of plaintiffs for leave to file a sur-reply to defendants' reply briefs be, and hereby is, GRANTED; it is further

**ORDERED** that the motions to dismiss filed by the surety defendants be, and hereby are, GRANTED to the extent that these motions seek dismissal of all claims brought against the surety defendants; it is further

**ORDERED** that all claims stated in Counts Two, Three, Four, and Six of the complaint be, and hereby are, dismissed according to USCIT Rule 12(b)(1) because standing does not exist as to any of these claims; it is further

**ORDERED** that all claims stated in Counts One and Five of the complaint be, and hereby are, dismissed according to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted; it is further

**ORDERED** that the named "surety defendants," identified individually as Aegis Security Insurance Company, American Contractors Indemnity Company, American Home Assurance Company, Great American Alliance Insurance Company, Great American Insurance Company, Great American Insurance Company of New York, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company,  Hartford Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, International Fidelity Insurance Company, Lincoln General Insurance Company, Washington International Insurance Company, XL Speciality Insurance Company and the unnamed defendants identified in the complaint as "DOES 1 through 50," be, and hereby are, dismissed as parties defendant from this action; it is further

**ORDERED** that the motion of the surety defendants for oral argument be, and hereby is, DENIED as moot; and it is further

**ORDERED** that the Clerk of the Court be, and hereby is, directed to amend the caption in this case to read as follows: "SIOUX HONEY ASSOCIATION, ADEE HONEY FARMS, MONTEREY MUSHROOMS, INC., THE GARLIC COMPANY, and BEAUCOUP

CRAWFISH, INC., dba RICELAND CRAWFISH, INC., individually and on behalf of all others similarly situated, Plaintiffs, v. UNITED STATES, Defendant."

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: March 26, 2010
         New York, New York